**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| OCCUPY TUCSON, an unincorporated political organization; SAMUEL AGGER, a single man residing in the City of Tucson; CRAIG BARBER, a single man residing in the City of Tucson; LEESA WORLEY, a single woman residing in the City of Tucson; KARLAREITH TERRY, a single woman residing in the City of Tucson; KASEE DWYER, a single woman residing in the City of Tucson; GARY BRANSON, a married man residing in the City of Tucson; and, WILLIAM WARFIELD, a single man residing in the City of Tucson,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF TUCSON, a municipal corporation of the State of Arizona; TUCSON POLICE DEPARTMENT, a legal entity of the City of Tucson; ROBERT "BOB" WALKUP, in his official capacity as Mayor of the City of Tucson; members of the Tucson City Council in their respective official capacities; RICHARD MIRANDA, in his official capacity as Acting Tucson City Manager; MICHAEL RANKIN, in his official capacity as Tucson City Attorney; FRED GREY in his official capacity as director of City of Tucson Parks and Recreation Department; and ROBERTO VILLASEÑOR, in his official capacity as Chief of the T,<br><br>Defendants. | No. CV-11-699-TUC-CKJ<br><br>**ORDER** |

Currently pending before the Court is Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 14]. In their motion Plaintiffs request the Court to "issue the [sic] a temporary restraining order that will prevent the City of Tucson from forcing them out of Viente de Agosto Park for a brief period until a hearing can be held, or until Plaintiffs' Counsel has time to file a Memorandum in Support of their Renewed Request for Temporary Restraining Order." Pls.' Renewed Mot. for TRO and Prelim. Inj. [Doc. 14] at 3.

## I.  BACKGROUND

Plaintiffs are participants in a local movement known as "Occupy Tucson." This movement is loosely affiliated with the "Occupy Wall Street" movement and "is opposed to excessive corporate power and influence in the American political system." Pls.' Compl. [Doc. 1] at ¶ 5. The Occupy Tucson movement began on October 15, 2011 in Armory Park located in downtown Tucson, Arizona. *Id.* From the inception of Occupy Tucson, the City of Tucson has issued citations for violations of Section 21 of the Tucson Code. *Id.* at ¶ 26. On November 3, 2011, the Occupy Tucson movement moved from Armory Park to Veinte De Agosto Park, also in downtown Tucson. *Id.* at ¶ 27.

On November 7, 2011, Plaintiffs filed the instant case alleging *inter alia* a First Amendment violation pursuant to 42 U.S.C. § 1983. Pls.' Compl. [Doc. 1] at ¶ 54. Plaintiffs allege that Section 21, Tucson Code, is unconstitutional on its face and as applied by Defendants. *Id.* Plaintiffs also allege a violation of Article 2 § 5 of the Arizona Constitution including infringement upon their rights to freedom of speech, freedom of assembly, freedom of association and freedom to petition the government for redress of grievances. *Id.* at ¶¶ 62-4. Plaintiffs also filed a Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2]. On November 8, 2011, this Court entered its Order [Doc. 6] denying Plaintiffs request for TRO. The Court denied Plaintiffs' request for Preliminary Injunction without

prejudice. On November 23, 2011, Defendant City of Tucson filed its Answer [Doc. 9].[1] On December 16, 2011, Defendant City of Tucson filed its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Doc. 12]. Plaintiffs' response to Defendant City of Tucson's motion is not yet due. On December 21, 2011, Plaintiffs filed their Renewed Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 14].

## II.    STANDARD OF REVIEW

Whether to grant or deny a motion for a temporary restraining order is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Whitman v. Hawaiian Tug & Barge Corporation/Young Bros., Ltd. Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998); *See New Motor Vehicle Bd. v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1347 n. 2, 98 S.Ct. 359, 361, 54 L.Ed.2d 439 (1977); *Los Angeles Unified Sch. Dist. v. U.S. Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1982). A preliminary injunction is an extraordinary and drastic remedy and will not be granted absent a clear showing of likely success in the underlying claim and likely irreparable injury. *See Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867, 138 L.Ed.2d 162 (1997) (*per curiam*); *Warsoldier v. Woodford*, 418 F.3d 989, 993-94 (9th Cir. 2005); *Pratt v. Rowland*, 65 F.3d 802, 805 (9th Cir. 1995); Fed. R. Civ. P. 65. To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L.Ed.2d 249 (2008); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ("The proper legal standard for preliminary injunctive relief requires a party to

---

[1] To date, Defendant City of Tucson is the only defendant to have been served in this matter.

1 demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"). The moving party has the burden of proof on each element of the test. *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Additionally, the function of a preliminary injunction is to preserve the status quo pending a determination on the merits. *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988). As such, there is heightened scrutiny where the movant seeks to alter rather than maintain the status quo. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party."). The Ninth Circuit Court of Appeals has held that this type of mandatory injunctive relief is disfavored, and should be denied unless the facts and law clearly favor the movant. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979). There is also heightened scrutiny where the injunction would provide substantially all the relief the movant may recover after a full trial on the merits. *Kikumura v. Hurley*, 242 F.3d 950, 955 (9th Cir. 2001).

### III.     ANALYSIS

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Plaintiffs previous motion for TRO did not assert any change in circumstances or policies surrounding the Occupy Tucson movement. Plaintiffs now aver that "a permit has been requested for the use of Viente [sic] de Agosto Park for December 28th." Pls.' Renewed Mot. for TRO and Prelim. Inj. [Doc. 14] at 2. In light of

- 4 -

the permit, "a staff person for City Council Member Regina Romero called a member of Occupy Tucson with information that the Park was going to be cleared by the police tonight." *Id.* Plaintiffs counsel avers that "he has attempted to contact City Attorney Michael Rankin regarding this renewed request [for TRO]." *Id.* Additionally, counsel notes that "the Motion to Dismiss/For Summary Judgment that Defendant City of Tucson filed contains all of their arguments as to why a TRO should not be granted." *Id.* at 4.

In light of the changed circumstances of this case, the Court will consider the merits of Plaintiffs' TRO request.

    *A.    Preserving the Status Quo*

Section 21, Tucson Code provides in full:

> It shall be unlawful for any person to violate any of the provisions set forth in the following series of this section:
>
> 2. *Sec. 21-3(1). Relating to park grounds and park property.* No person in a park shall:
>
> (1) *Disfigure or remove buildings, structures or facilities.* Wilfully mark, deface, disfigure, injure, destroy, tamper with, or displace or remove any building, bridge, table, bench, fireplace, railing, paving or paving material, waterline or other public utility or parts or appurtenances thereof; sign, notice or placard whether temporary or permanent; monument, stake, post or other boundary marker; or other structure or equipment, facility or park property or appurtenances whatsoever, either real or personal.
>
> (2) *Restrooms and washrooms.* Enter any restroom or washroom to engage in any unlawful act or to use the facilities for other than their primary purpose; or use the restrooms and washrooms designated for the opposite sex, unless under six (6) years of age.
>
> (3) *Natural resources.* Dig, remove or damage soil, rock, stones, trees, shrubs or plants, down-timber or other wood or materials, or make any excavation by tool, equipment, blasting, or other means or agency.
>
> (4) *Erect structures, install utility services.* Construct or erect any building or structure of whatever kind, whether permanent or temporary in character, or run or string any public service utility into, upon or across park land.
>
> *Sec. 21-3(2).* Relating to wild animals. No person in a park shall:
>
> (1) *Hunting.* Hunt, molest, harm, frighten, kill, trap, chase, tease, shoot or throw missiles at any animal, reptile or bird or fish; the young of any wild

animal; or the eggs or nest, or young of any reptile, bird or fish.

(2) *Feeding.* Give or offer, or attempt to give to any animal, reptile, bird or fish any tobacco, alcohol or other noxious substances.

(3) *Fishing.* Fish, fishnet, spear or catch in any manner fish in any waters in a park without proper licensing as required by the director or the Arizona Fish and Game Department.

*Sec. 21-3(3).* Relating to sanitation. No person in a park shall:

(1) *Pollution of waters.* Throw, discharge or otherwise place or cause to be placed in the waters of any fountain, pond, lake, stream or other body of water in a park any substance, matter or thing, liquid or solid, which may result in the pollution of park waters.

(2) *Refuse and trash.* Dump, deposit or leave any bottles, broken glass, paper, boxes, cans, dirt, rubbish, waste, garbage or refuse, or other trash unless placed in the proper receptacles where provided; where receptacles are not so provided, all such rubbish or waste shall be carried for its presence and properly disposed of elsewhere.

(3) *Glass beverage containers.* Have a glass beverage container in his possession.

(4) *Throwing or breaking glass.* Throw, toss or otherwise propel, or either knowingly or recklessly break any glass object. (Ord. No. 5558, §§ 1, 2, 5-3-82)

*Sec. 21-3(4). Relating to traffic.* No person in a park shall:

(1) *Motor vehicles laws apply.* Violate any state and city motor vehicle laws relating to traffic on highways, which laws shall apply to all persons, vehicles and bicycles while on park property; provided that no person shall drive a vehicle in a park at a speed exceeding fifteen (15) miles per hour, except upon such roads as the director may designate, by posted signs, for speedier travel. No person shall drive a vehicle on any park area except the paved park roads or parking areas, or such other areas as may on occasion be specifically designated as temporary parking areas by the director.

(2) *Parking.*

(a) *Designated areas.* Park a vehicle in other than established or designated parking areas, and such use shall be in accordance with the posted directions thereat.

(3) *Designation of parking areas.* The director may cause to be designated and posted any park area in which parking is prohibited for a limited or a permanent time.

- 6 -

*Sec 21-3(5). Relating to recreation.* No person in a park shall:

(1) *Bathing and swimming.*

(a) *Designated areas.* Swim, bathe or wade in any waters or waterways in a park, except in such waters and at such places as are provided therefor, and in compliance with such rules and regulations as may be set forth or hereafter adopted by the director. Frequent any waters or places customarily designated for the purpose of swimming or bathing, or congregate thereat when such activity is prohibited by the director upon finding that such use of the water would be dangerous to the public health, safety or welfare.

(b) *Designated hours.* Frequent any waters or places designated for the purpose of swimming or bathing, or congregate thereat, except between such hours of the day as shall be designated by the director for such purposes for each individual area.

(c) *Boating.* Sail, row or use or propel any boat, raft or other vessel on any waters in a park where such activity is limited, restricted or prohibited by the director or a state or federal agency.

(2) *Hunting and firearms.*

(a) Hunt, trap, or pursue wildlife at any time or shoot from or into park areas.

(b) Except as provided in subparagraphs (c) and (d), use, carry or possess:

(i) Firearms as defined in A.R.S. § 13-3101 without possession of a concealed weapons permit issued pursuant to A.R.S. § 13-3112,

Note--Pursuant to a memo issued by the City Attorney, dated Dec. 29, 2006, the statute cited in this subsection was changed from A.R.S. § 13-1301 to A.R.S. § 13-3101.

(ii) Air rifles, spring guns, bows and arrows, slings, or any other form of weapon potentially injurious to wildlife and dangerous to human safety,

(iii) Any instrument that can be loaded with and fire blank cartridges, or

(iv) Any kind of trapping device.

(c) The limitation imposed by subparagraph (b)(i) upon the possession of firearms shall not apply to a person legally transporting, carrying, storing, or possessing a firearm in a vehicle.

(d) A person without possession of a concealed weapons permit but otherwise lawfully in possession of a firearm may be present in Sunset/El Presidio and Jacome Parks for the sole purpose of ingress to and egress from city hall and

- 7 -

the Joel Valdez Main Library to store their firearm in city provided gun lockers located therein as follows:

(i) Such person may enter Sunset/El Presidio Park from the sidewalks along Alameda and Pennington Streets onto the paved walkways leading directly to and from the north and south entrances of city hall.

(ii) Such person may enter Jacome Park from the sidewalks along Church and Stone Avenues onto the paved walkways leading directly to and from the entrances to Joseph Valdez Library.

(3) *Explosives and pyrotechnics.* Process or explode or cause to be exploded any explosive or pyrotechnical device without a written permit from the director.

(4) *Camping.* Camp, lodge or sleep therein between the hours of 10:30 p.m. and 6:00 a.m. unless special written permit be obtained seventy-two (72) hours in advance from the director.

(5)   *Golfing*.

   (a)   *Hitting balls*. Hit golf balls or take practice swings with a golf club, or strike a simulated golf ball except at Randolph Municipal Golf Course, El Rio Golf Course or other municipal golf courses, or at practice areas designated therein, or other areas set aside by the director for such purposes.

   (b)   *Playing golf*. Play golf upon Randolph Municipal Golf Course or El Rio Golf Course or any municipal golf course without having paid the fees stipulated by the director for that purpose.

   (c)   *Carrying permit*. Play golf without carrying a permit or fail to display such permit upon request by any authorized employee of the parks and recreation department or police officer.

   (6)   *Tennis*. Walk, play upon or otherwise use any park area designated for the purpose of playing tennis, unless such person is wearing flat, soft tennis shoes without raised heels of any kind; or skate or ride a bicycle, or drive any vehicle upon any tennis court; or give tennis lessons when such lesson or lessons are given for compensation or fees of any sort, except when lessons are offered as part of a recreation program sponsored by the city. (Ord. No. 5204, § 1, 8-4-80; Ord. No. 6595, § 1, 12-8-86; Ord. No. 9417, § 1, 7-10-00; Ord. No. 9987, § 1, 6-21-04)

*Sec. 21-3(6). Relating to commercial activities*. No person in a park shall:

   (1)   Merchandising, advertising and signs. Utilize any park property for any commercial or political purposes, except by permit issued by the director.

   (2)   *Vending and peddling*. Expose or offer for sale any article or thing; station or place any stand, cart or vehicle for the transportation, sale or display of any article or thing. A regularly licensed concessionaire acting by and under the authority and regulation of the director, and vendors of food and refreshments who are in possession of a current vendor's permit issued by the

director are excepted from this provision.

(3) *Advertising*. Announce, advertise or call the public attention in any way to any article or service for sale or hire, except by such regulations as may be designated by the director.

(4) *Signs*. Paste, glue, tack or otherwise post any sign, placard, advertisement or inscription.

(5) *Handbills*. Distribute or attempt to distribute business or commercial literature to persons, or place them upon vehicles. (Ord. No. 5678, § 1, 11-8-82)

*Sec. 21-3(7). Relating to miscellaneous activities*. No person in a park shall:

(1) *Domestic animals*. Bring or escort a dog or any other domestic animal or pet into any area within park boundaries which is clearly marked by signs bearing the words: "Domestic Animals and Pets Prohibited in This Area." This provision shall not be construed as permitting the running of dogs, domestic animals or pets at large. Bring in or escort any dog, domestic animal or pet in those areas where such animals are permitted unless restrained at all times on leashes not to exceed six (6) feet in length and unless they wear a collar and display thereon a valid city license.

(2) *Fires*. Build, or attempt to build, kindle or ignite a fire except in such areas and under such rules and regulations as may be designated by the director; or drop, throw or otherwise scatter lighted matches, burning cigarettes or cigars, charcoal or coals, or other flammable or flaming materials within any park area.

(3) *Closed areas*. Enter an area posted as "Closed to the Public," or posted "No Trespassing," or use or abet the use of any area in violation of posted notices, except for those places and recreational activities therein permitted by the director pursuant to section 21-2 above.

(4) *Interfere with permittees*. Disturb or interfere unreasonably with any person or party occupying any area, or participating in any activity, under the authority of a permit license or reservation.

(5) *Excreta*.

(a) Emit, eject or cause to be deposited any excreta of the human body, except in those places designated for such purposes.

(b) Permit to be deposited and allow to remain in a park any untreated solid excreta of a dog, domestic animal or pet, except in those places which may be designated for such purposes.

(6) *Improper admission*. Gain admission to, attempt admission to, to make use of park facilities for which a charge is made without paying the fixed charge or admission, unless otherwise authorized by the director.

(7) *Athletic events*. Interfere with any of the authorized participants of any game, contest or athletic event conducted on any playing field from the time the event starts until its conclusion, and any time in between.

- 9 -

      (8)    *Horses and livestock.* Bring or permit horses, cattle or any other livestock in a park without advanced written permit from the director. (Ord. No. 5204, § 2, 8-4-80)

Tucson Code, § 21-3. This section of the Tucson Code was adopted on January 10, 1977. *See id.*; *See also* Tucson Code, Ch. 21 eds. note.

"A temporary restraining order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *Whitman*, 27 F.Supp.2d at 1228. Here, the status quo is that Tucson Code § 21-3 has been in effect since 1977, and since the inception of the Occupy Tucson movement, the City has indicated its intention to enforce the Code by issuing citations to violators. As such, the status quo is that there is currently a thirty-four year old ordinance which is being enforced by the government.

Plaintiffs request seeks to alter the status quo by precluding the City from enforcing § 21-3. There is no allegation that the City was not enforcing § 21-3 previously. Although enforcement since October 15, 2003 has primarily consisted of the issuance of citations, Occupy Tucson members were previously removed from Armory Park. Thus, any argument that the status quo is Plaintiffs' constitutional right to free speech which is abridged by enforcement of § 21-3, presumes that § 21-3 is facially unconstitutional. Every regulation of speech, however, is not unconstitutional. The Court cannot conclude that the enforcement of § 21-3 results in a disturbance of the status quo thereby justifying the issuance of a TRO.

### B. Likelihood of Success on the Merits

At this juncture, Plaintiffs have not provided any authority or argument to suggest that Tucson Code § 21-3 is not a valid time, manner, place restriction on speech. To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L.Ed.2d 249 (2008). The Ninth Circuit has also recognized a "sliding scale" approach, under which "the elements of the preliminary injunction test are balanced, so that a stronger

1  showing of one element may offset a weaker showing of another." *Alliance for the Wild*
2  *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

3  "Expression, whether oral or written or symbolized by conduct, is subject to
4  reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-*
5  *Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (9th Cir. 1984).
6  Moreover, "a content-neutral time, place and manner regulation can be applied in such a
7  manner as to stifle free expression[; however, it] thus must contain adequate standards to
8  guide an official's decision and render that decision subject to effective judicial review."
9  *Thomas v. Chicago Park District*, 534 U.S. 316, 316, 122 S.Ct. 775, 775, 151 L.Ed.2d 783
10 (2002) (citations omitted). On its face, Section 21-3 appears to "(1) be content neutral; (2)
11 be narrowly-tailored; (3) support a substantial government purpose; (4) provide the Director
12 with constitutionally sufficient discretion; and (5) be constitutionally sufficient." *Occupy*
13 *Sacramento v. City of Sacramento*, 2011 WL 5374748 (E.D. Cal.). Indeed, the Supreme
14 Court's decision in *Clark* would appear to compel a decision contrary to Plaintiffs' position.
15 In *Clark*, the Court stated:

> No one contends that aside from its impact on speech a rule against camping or overnight sleep in public parks is beyond the constitutional power of the Government to enforce. And for the reasons we have discussed above, there is a substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties.

20 *Clark*, 468 U.S. at 298-99, 104 S.Ct. at 3071-72.

21 Currently, a valid permit holder will be using Veinte De Agosto Park on December
22 28, 2011. It appears that since the inception of this lawsuit, none of the Plaintiffs have
23 sought a permit from the City for use of the park. The regulation that Plaintiffs seek to enjoin
24 enforcement of is content-neutral. It regulates the hours during which any individual may
25 use the park. Plaintiffs have not put forth any arguments to indicate that there is a content-
26 based component to the regulation. Indeed, Plaintiffs have not put forth any legal arguments
27 as to why the City's ordinance is invalid. As such, Plaintiffs have failed to meet their burden
28 to demonstrate a likelihood of success on the merits.

1  The Court further notes Plaintiffs' suggestion that Defendant City of Tucson's Motion
2  to Dismiss, or in the Alternative, Motion for Summary Judgment [Doc. 12] is on point
3  regarding their TRO request. There are no rules or prohibitions against Plaintiffs filing their
4  response brief to Defendant's motion prior to the deadlines contemplated by Rules 6 and 12,
5  Federal Rules of Civil Procedure. This would allow an expedited hearing schedule on the
6  motion to dismiss or other alternative relief sought by Plaintiffs.

7  Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Renewed Motion for
8  Temporary Restraining Order and Preliminary Injunction [Doc. 14] is DENIED.

9  DATED this 22nd day of December, 2011.

Cindy K. Jorgenson
United States District Judge