IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| OCCUPY TUCSON, an unincorporated political organization; SAMUEL AGGER, a single man residing in the City of Tucson; CRAIG BARBER, a single man residing in the City of Tucson; LEESA WORLEY, a single woman residing in the City of Tucson; KARLAREITH TERRY, a single woman residing in the City of Tucson; KASEE DWYER, a single woman residing in the City of Tucson; GARY BRANSON, a married man residing in the City of Tucson; and, WILLIAM WARFIELD, a single man residing in the City of Tucson,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE CITY OF TUCSON, a municipal corporation of the State of Arizona; TUCSON POLICE DEPARTMENT, a legal entity of the City of Tucson; ROBERT "BOB" WALKUP, in his official capacity as Mayor of the City of Tucson; members of the Tucson City Council in their respective official capacities; RICHARD MIRANDA, in his official capacity as Acting Tucson City Manager; MICHAEL RANKIN, in his official capacity as Tucson City Attorney; FRED GREY in his official capacity as director of City of Tucson Parks and Recreation Department; and ROBERTO VILLASEÑOR, in his official capacity as Chief of the T,<br><br>    Defendants. | No. CV-11-699-TUC-CKJ<br><br>**ORDER** |

Currently pending before this Court is Defendant City of Tucson's ("COT" or "the City") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Doc. 12]. Plaintiffs filed their response in opposition and Defendant replied. [Docs. 19 & 20]. On February 13, 2012, oral argument was heard. At that hearing, Plaintiffs requested an opportunity to submit a controverting statement of facts, in light of their treatment of the motion as solely a motion to dismiss pursuant to Rule 12, Federal Rules of Civil Procedure. The face of Defendant's motion unequivocally states that summary judgment was contemplated. As such, the Court will deny Plaintiffs' oral request to supplement the record with a controverting statement of facts.[1]

## I.   FACTUAL BACKGROUND

Plaintiffs are participants in a local movement known as "Occupy Tucson." This movement is loosely affiliated with the "Occupy Wall Street" movement and "is opposed to excessive corporate power and influence in the American political system." Pls.' Compl. [Doc. 1] at ¶ 5. The Occupy Tucson movement began on October 15, 2011 in Armory Park located in downtown Tucson, Arizona. *Id.* From the inception of Occupy Tucson, the City of Tucson has issued citations for violations of Section 21 of the Tucson Code. *Id.* at ¶ 26. On November 3, 2011, the Occupy Tucson movement moved from Armory Park to Veinte De Agosto Park, also in downtown Tucson. *Id.* at ¶ 27.

On November 7, 2011, Plaintiffs filed the instant case alleging *inter alia* a First Amendment violation pursuant to 42 U.S.C. § 1983. Pls.' Compl. [Doc. 1] at ¶ 54. Plaintiffs allege that Section 21, Tucson Code, is unconstitutional on its face and as applied by Defendants. *Id.* Plaintiffs also allege a violation of Article 2 § 5 of the Arizona Constitution including infringement upon their rights to freedom of speech, freedom of assembly, freedom of association and freedom to petition the government for

---

[1]Additionally, the Court notes that previous motions filed in this case, demonstrate that the material facts in this matter are uncontested.

- 2 -

redress of grievances. *Id.* at ¶¶ 62-4. Plaintiffs also filed a Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2]. On November 8, 2011, this Court entered its Order [Doc. 6] denying Plaintiffs' request for a TRO. The Court denied Plaintiffs' request for a Preliminary Injunction without prejudice. On November 23, 2011, Defendant City of Tucson filed its Answer [Doc. 9].[2] On December 16, 2011, Defendant City of Tucson filed its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Doc. 12]. On January 18, 2012, Plaintiffs filed their response [Doc. 19]. On January 27, 2012, Defendant City of Tucson filed its reply [Doc. 20].

## II.   STANDARD OF REVIEW

This matter is before the Court on Defendant City of Tucson's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, or in the alternative a motion for summary judgment. A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed. R. Civ. P. While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Rule 12(b)(6), Fed. R. Civ. P. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2]To date, Defendant City of Tucson is the only defendant to have been served in this matter.

- 3 -

1  liable for the misconduct alleged. The plausibility standard is not akin to a 'probability
2  requirement,' but it asks for more than a sheer possibility that a defendant has acted
3  unlawfully." *Id.* (citations omitted).

4  Summary judgment is appropriate when, viewing the facts in the light most
5  favorable to the nonmoving party, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255
6  (1986), "there is no genuine issue as to any material fact and [] the moving party is
7  entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it
8  "might affect the outcome of the suit under the governing law," and a dispute is
9  "genuine" if "the evidence is such that a reasonable jury could return a verdict for the
10 nonmoving party." *Anderson*, 477 U.S. at 248. Thus, factual disputes that have no
11 bearing on the outcome of a suit are irrelevant to the consideration of a motion for
12 summary judgment. *Id.* In order to withstand a motion for summary judgment, the
13 nonmoving party must show "specific facts showing that there is a genuine issue for
14 trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, a "mere scintilla of
15 evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252.

17 **III.   ANALYSIS**

18 Defendant COT seeks dismissal of the organizational Plaintiff, Occupy Tucson
19 based upon a lack of standing. Defendant COT seeks dismissal, or in the alternative,
20 summary judgment against the individual Plaintiffs regarding their state and federal
21 constitutional claims.

23 *A. Standing*

24 Defendant COT asserts that Occupy Tucson, as an entity, does not have standing
25 to litigate this cause of action. Plaintiffs fail to address this argument in their response,
26 and at oral argument suggested that the Court need not even reach this issue.

27 "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins.*
28 *Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). "The

1  jurisdiction of federal courts is defined and limited by Article III of the Constitution."
2  *Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed. 947 (1968).  Further, the
3  judicial power of this and all federal courts is limited to actual cases or controversies.
4  U.S. Const. art. III; *See also, Flast v. Cohen*, 392 U.S. 83, 94-95, 88 S.Ct. 1942, 1949-50,
5  20 L.Ed.2d 947 (1968).  The Supreme Court of the United States recognizes several
6  doctrines which define the constitutional and prudential limitations on the federal courts'
7  power to hear cases.  *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82
8  L.Ed.2d 556 (1984).  Included among these are the concepts of standing, mootness,
9  ripeness and political questions.  *Id.*  Prior to invoking the power of the federal court, it
10 must be determined "whether the litigant is entitled to have the court decide the merits of
11 the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197,
12 2205, 45 L.Ed.2d 343 (1975).  "[T]he standing question is whether the plaintiff has
13 'alleged such a personal stake in the outcome of the controversy' as to warrant his
14 invocation of federal-court jurisdiction and to justify exercise of the court's remedial
15 powers on his behalf."  *Id.*, 95 S.Ct. at 2205 (citations omitted).  "The Art. III judicial
16 power exists only to redress or otherwise to protect against injury to the complaining
17 party[.]" *Id.*; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1, 112 S.Ct. 2130, 2136
18 n.1, 119 L.Ed.2d 351 (1992) ("the injury must affect the plaintiff in a personal and
19 individual way.").

20        "An association has standing to bring suit on behalf of its members when its
21 members would otherwise have standing to sue in their own right, the interests at stake
22 are germane to the organization's purpose, and neither the claim asserted nor the relief
23 requested requires the participation of individual members of the lawsuit."  *Friends of the*
24 *Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 181, 120 S.Ct. 693, 704,
25 145 L.Ed.2d 610 (2000) (citations omitted).  Plaintiffs bear the burden of showing that
26 they have standing for each type of relief sought.  *Summers v. Earth Island Institute*, 555
27 U.S. 488, 493, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009) (citations omitted); *Lujan*,
28 504 U.S. at 561, 112 S.Ct. at 2136.  In order to meet this burden, Plaintiffs must show that

- 5 -

(1) they have suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent"; (2) a causal connection between the injury fairly traceable to defendant's actions; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2136. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[;] . . . [however,] [i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . 'supported adequately by the evidence adduced at trial.'" *Id.* at 561, 112 S.Ct. at 2137 (citations omitted).

Here, Defendants argue that Plaintiff "Occupy Tucson" does not have standing pursuant to Article III of the United States Constitution. Defendants do not address, however, why associational standing is not proper. Plaintiffs fail to address the standing issue at all in their response. As a result, Defendants argue that Occupy Tucson should be summarily dismissed from the lawsuit. It is the Court's responsibility, however, to determine whether standing exists. "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206-07. "If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Id.* at 501-02, 95 S.Ct. at 2207. Plaintiffs have not provided any affidavits to support Occupy Tucson's associational standing.

At oral argument, Plaintiffs' counsel essentially conceded that Occupy Tucson did not have the requisite standing to remain a party in this cause of action. Moreover, Plaintiff's counsel recognized that in light of the individually named plaintiffs, the absence of Occupy Tucson as an entity would not be deleterious to the litigation as a whole. In light of the foregoing, the Court finds that Plaintiff Occupy Tucson, as an organizational entity, does not have standing and shall be dismissed from this cause of action.

*B. Expressive Speech*

Plaintiffs spend a significant portion of their response arguing that sleeping is expressive speech. The Supreme Court of the United States in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), assumed for purposes of a no-camping ban that sleep was expressive conduct. At oral argument, Plaintiffs' counsel asserted that the sleeping in this case was even more expressive than that in *Clark*, because a twenty-four hour presence was necessary to Plaintiffs' "occupation." Without deciding the validity of Plaintiffs' position, for purposes of this Order, the Court will assume that sleeping is expressive conduct in this case.

*C. Facial Challenge to City Ordinance*

Plaintiffs assert that the City of Tucson ordinance is invalid on its face because the "Parks Director has complete discretion whether or not to close a park." Pls.' Resp. to Def. COT's Mot. to Dismiss [Doc. 19] at 10.

The two sections of the Tucson City Code in question are:

*Sec 21-3(5). Relating to recreation.* No person in a park shall:

\* \* \*

(4) *Camping.* Camp, lodge or sleep therein between the hours of 10:30 p.m. and 6:00 a.m. unless special written permit be obtained seventy-two (72) hours in advance from the director.

*Sec. 21-3(7). Relating to miscellaneous activities.* No person in a park shall:

\* \* \*

(3)  *Closed areas.* Enter an area posted as "Closed to the Public," or posted "No Trespassing," or use or abet the use of any area in violation of posted notices, except for those places and recreational activities therein permitted by the director pursuant to section 21-2 above.

Tucson Code, § 21-3. This section of the Tucson Code was adopted on January 10, 1977. *See id.*; *See also* Tucson Code, Ch. 21 eds. note.

As an initial matter, Plaintiffs argue that it does not matter whether or not they

applied for a permit.[3] Plaintiffs rely on *Freedman v. State of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) for this proposition. *Freedman* involved a facial challenge to Maryland's censorship statute. Indeed, the cases relied upon by Plaintiffs all involved regulations on *speech* – the regulations in the Tucson City Code do not address speech. They have a secondary impact on speech, which is a permissible time, manner, place restriction. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.")

In *Clark*, the Court stated:

> No one contends that aside from its impact on speech a rule against camping or overnight sleep in public parks is beyond the constitutional power of the Government to enforce. And for the reasons we have discussed above, there is a substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties.

*Clark*, 468 U.S. at 298-99, 104 S.Ct. at 3071-72. Plaintiffs have not refuted this statement. Moreover, their reliance on *Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993) is misplaced. In *Gerritsen*, plaintiff had "strongly held opinions about the Mexican government and United States-Mexico relations. Gerritsen ha[d] sought to express these views by distributing literature, giving speeches, organizing rallies, and utilizing a variety of other protest activities throughout the greater Los Angeles area." *Gerritsen*, 994 F.2d at 572. Then, "[o]n August 11, 1983, in response to conflicts between Gerritsen and park administrators and security guards, the City's Board of Recreation and Parks Commission enacted provisions regarding handbill distribution in El Pueblo Park." *Id.* at 573. "Prior to enactment of this policy, there was no formal policy concerning the distribution of literature in the park." *Id.* "The City concede[d]

---

[3] In denying Plaintiffs' Motion for TRO, this Court noted that Plaintiffs had not applied for a permit. This comment was made to reflect that the City could have allowed camping in Veinte De Agosto Park, but Plaintiffs did not even make the effort to obtain a permit.

- 8 -

that these provision were prompted solely by Gerritsen's political activity in the park and were the result of consultations between El Pueblo Park Director Jerry Smart and the City Attorney's office." *Id.* In *Gerritsen*, the conduct at issue, handbill distribution, could not be construed as anything but speech. Moreover, the City of Los Angeles's policy regarding handbill distribution was enacted *as a result of* Gerritsen's activities. In the instant case, the Tucson City Code has been in force since 1977. *See* Tucson Code, § 21-3; *See also* Tucson Code, Ch. 21 eds. note. Unless Plaintiffs concede that sleeping/camping in a park is ALWAYS speech, they cannot refute that the City's regulation is content-neutral. Indeed, at oral argument, Plaintiffs' counsel was unwilling to make this concession, but chose to argue that the expressive speech of Occupy Tucson is of such vital importance that any regulation of it is *ipso facto* unreasonable.

Furthermore, Plaintiffs' argument that the Parks Director can deny a permit on a whim or fancy is without merit. Plaintiffs never applied for a permit. The ban on camping closes all parks between the hours of 10:30 p.m. to 6:30 a.m. to the activities of "camp[ing], lodg[ing] or sleep[ing]" without a permit. Tucson Code, § 21-3(5)(4). Similarly, the parks closure ordinance provides an exception for permitted activities. Tucson Code, § 21-3(7)(3). At oral argument, counsel for the City indicated that in the event a permit is applied for and denied, there are due process procedures in place to allow appeal and judicial review of the director's decision. This is not at issue here, because as noted *supra*, Plaintiffs never applied for a permit.

At oral argument, Plaintiffs' counsel asserted that the Court must still consider the park director's discretion to close a park because he enforced the closures unfairly against the Occupy Tucson movement. The record before the Court is devoid of any evidence to support counsel's contentions. There is nothing to demonstrate that the City has never enforced the camping ban or other closure against anyone in the thirty-five (35) years that these code provisions have been in force. Moreover, Plaintiffs' arguments suggest that they deserve special treatment because of the importance of their message. Such assertions minimize the importance of a myriad of other topics about which people may

- 9 -

express opinions. Furthermore, the ordinances at issue are content-neutral, and this Court is unwilling to fashion an "Occupy Tucson Exception" to the long-standing City Code.

Finally, the Supreme Court has noted that their "cases permitting facial challenges to regulations that allegedly grant officials unconstrained authority to regulate speech have generally involved licensing schemes that 'ves[t] unbridled discretion in a government official over whether to permit or deny expressive activity.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 793, 109 S.Ct. 2746, 2755, 105 L.Ed.2d 661 (1989) (alterations in original) (citations omitted). Here, the closures involve a prohibition on camping and general park hours of operation. As the *Clark* Court stated "[s]urely the regulation [at issue here] is not unconstitutional on its face." *Id.* at 298, 104 S.Ct. at 3071.

### D. Time, Place, Manner Restriction

The Supreme Court of the United States cases "make clear . . . that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753 (quoting *Clark*, 468 U.S. at 293, 104 S.Ct. at 3069). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791, 109 S.Ct. at 2754 (citations omitted).

The regulation that Plaintiffs seek to enjoin enforcement of is content-neutral. It regulates the hours during which any individual may use the park. Plaintiffs have not put forth any supportable arguments to indicate that there is a content-based component to the regulation. The City notes that the Code provisions were adopted "in order to 'make the parks of the City safer, cleaner, and a more pleasant place to visit for all families and

- 10 -

1 individuals of the city.'" Def. COT's Mot. to Dismiss, or in the alternative, Mot. for
2 Summ. J. [Doc. 12] at 12.  The City Code provisions further the governmental interest of
3 "maintain[ing] and control[ling] lands for parks and recreation purposes, and . . .
4 promot[ing] and protect[ing] the health, safety and welfare of the public." *Id.*  These
5 goals were articulated at oral argument by counsel for the City highlighting the
6 government's interest in being able to maintain the parks generally, as well as facilitate
7 their use by other members of the community.  Consistent with the Supreme Court's
8 determination in *Clark*, the Court finds that these governmental interests are significant
9 and this regulation is narrowly tailored to serve those purposes.  Finally, Plaintiffs have
10 ample opportunity to communicate their message without violating the City's ordinances.
11 "If the Government has a legitimate interest in ensuring that the [City] Parks are
12 adequately protected, which we think it has, and if the parks would be more exposed to
13 harm without the sleeping prohibition than with it, the ban is safe from invalidation under
14 the First Amendment as a reasonable regulation of the manner in which a demonstration
15 may be carried out." *Clark*, 468 U.S. at 298, 104 S.Ct. at 3071.

*E. Arizona Constitution*

18 Plaintiffs argue that the Tucson City Code violates Sections 5 and 6 of Arizona's
19 Declaration of Rights.  Plaintiffs rely heavily on *State v. Stummer*, 219 Ariz. 137, 194
20 P.3d 1043 (2008).  Plaintiffs reliance is misplaced.  In *Stummer*, the Arizona State
21 Supreme Court held that an ordinance restricting when adult bookstores and cabarets
22 could be open as violative of the Arizona State Constitution.  Unlike the ordinance at
23 issue here, the ordinance clearly targeted adult stores and was content based.  The
24 *Stummer* court recognized that "[t]he appropriate test for measuring the constitutionality
25 of content-based secondary effects regulations must vindicate the constitutional right to
26 free speech, yet accommodate the government's interest in protecting the public health,
27 safety, and welfare." *Stummer*, 219 Ariz. at 144, 194 P.3d at 1050.  The court went on to
28 enunciate a two-step test for whether  intermediate scrutiny is appropriate. *Id.*  First, "the

1  State must demonstrate that a content-based regulation is directed at ameliorating
2  secondary effects, not at suppressing protected speech." *Id.*  Secondly, "to survive
3  intermediate scrutiny, the State must show that, in addressing the secondary effects, the
4  regulation does not sweep too broadly." *Id.*

5  Here, the City regulation is *not* a content-based regulation. Rather, it is content
6  neutral. As such, *Stummer* is inapplicable. Plaintiffs have failed to show that the
7  regulations in question are truly *content-based*. As such, the Supreme Court of the United
8  States' test for content-neutral time, manner, place restriction on speech should apply.
9  The City's regulations do not abridge the requirements mandated by the Arizona State
10 Constitution.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant City of Tucson's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Doc. 12] is GRANTED. IT IS FURTHER ORDERED that Defendant City of Tucson is DISMISSED from this cause of action WITH PREJUDICE.

DATED this 3rd day of May, 2012.

_____
Cindy K. Jorgenson
United States District Judge